UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA DALE STEINGOLD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | ) Case No. CV 11-7700 JC<br>)<br>) MEMORANDUM OPINION<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## I.　SUMMARY

On September 22, 2011, plaintiff Cynthia Dale Steingold ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; September 26, 2011, Case Management Order ¶ 5.

///

///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income benefits on, respectively, September 26 and October 4, 2006. (Administrative Record ("AR") 26, 161, 180). Plaintiff asserted that she became disabled on May 30, 2003, due to scoliosis, sistic [sic] ovaries, and severe lower back pain. (AR 195). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) on July 14, 2009.[2] (AR 116-42).

On September 29, 2009, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 26). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine and a history of right knee surgery (AR 28-29); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 29); (3) plaintiff retained the residual functional capacity to perform the full range of sedentary work (20 C.F.R. §§ 404.1567(a), 416.967(a)) (AR 30); (4) plaintiff could perform her past relevant work as a receptionist (AR 33); and (5) plaintiff's allegations regarding her

---

[1]The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2]On July 10, 2008, a prior Administrative Law Judge ("Prior ALJ") heard testimony from plaintiff (who was represented by counsel) and a vocational expert, but due to the Prior ALJ's illness the case was reassigned to the instant ALJ. (AR 79-115, 118).

limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 32).

The Appeals Council denied plaintiff's application for review. (AR 1).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///
///

    (4)    Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

    (5)    Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.  DISCUSSION

### A.  The ALJ Properly Evaluated the Medical Opinion Evidence

#### 1.  Pertinent Law

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided.  Courts distinguish among the opinions of three types of physicians:  those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians").  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[3]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d

---

[3] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id. (citation and internal quotations omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer his conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

### 2. Pertinent Facts

On September 29, 2003, Dr. Behzad Emad, an examining physical medicine specialist for plaintiff's worker's compensation case, conducted a Final Medical Consultation which included a physical examination for plaintiff.  (AR 257-65).  Dr. Emad's report reflects, *inter alia*, that plaintiff had cervical/thoracic/lumbar myofibrosis, impaired neck motion with secondarily impaired shoulder motion, impaired/restricted torso motion with torso weakness in the thoracic region, torso weakness with secondary buttock and leg weakness, abnormal straight leg tests suggesting sciatic nerve irritation, and radiculopathy with sensory abnormality.  (AR 260-61).  Dr. Emad diagnosed plaintiff with "[c]hronic posttraumatic injury

of the cervical spine with musculotendinoligamentous involvement and right and left posterior joint damage" and "[c]hronic, symptomatic, posttraumatic injury of the thoracic and lumbar spine (status post surgery)." (AR 260). Due to plaintiff's "back condition," Dr. Emad limited plaintiff to "semi-sedentary work." (AR 262). With respect to plaintiff's cervical spine condition, Dr. Emad recommended the following restrictions: "Because of the neck condition, the work should not require repeated or prolonged twisting or turning of the neck or maintaining the neck in an uncomfortable position, such as with prolonged desk work, driving and overhead work." (AR 263). Dr. Emad stated that the proposed restrictions related to plaintiff's back and neck conditions were "required prophylactically to prevent further symptoms and damage which could result in increased impairment and loss of work capacity and capacity for self care." (AR 263).

On December 7, 2006, Dr. Seung Ha Lim conducted an Internal Medicine Consultation which included a physical examination of plaintiff. (AR 317-21). Dr. Lim found, *inter alia*, that plaintiff had "normal range of motion in the neck but presents pain on motion, paravertebral tenderness, and decreased range of motion of the back without any signs of radiculopathy." (AR 320). Dr. Lim opined that plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk four hours in an eight-hour work day, sit six hours in an eight-hour work day, could occasionally climb, crouch, crawl, stoop and kneel, and occasionally use the right lower extremity. (AR 321).

On January 10, 2009, Dr. Payam Moazzaz, conducted a Complete Orthopedic Consultation which included a physical examination of plaintiff. (AR 295-300). Dr. Moazzaz found, *inter alia*, that plaintiff had range of motion in the cervical spine and shoulders within normal limits, tenderness to palpation in the paraspinal musculature, decreased thoracolumbar range of motion secondary to pain, and positive straight leg raising on the left. (AR 297-98). Dr. Moazzaz diagnosed plaintiff with degenerative disc disease of the lumbar spine with left

lower extremity radiculopathy, and opined that plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk six hours in an eight-hour work day, sit six hours in an eight-hour work day, and occasionally bend, kneel, stoop, crawl and crouch. (AR 299).

### 3. Analysis

Plaintiff contends that a reversal or remand is warranted essentially because the ALJ ignored Dr. Emad's medical findings regarding plaintiff's alleged cervical spine condition and failed to account for Dr. Emad's proposed neck restrictions in plaintiff's residual functional capacity. (Plaintiff's Motion at 3-5). The Court disagrees.

First, to the extent plaintiff contends that the ALJ ignored Dr. Emad's opinions regarding plaintiff's cervical spine condition, such contention is belied by the record. The ALJ expressly noted that "Dr. Emad diagnosed chronic posttraumatic injuries of the <u>cervical</u> and lumbar spine. . . ." (AR 31) (emphasis added). Simply because the ALJ did not provide a more thorough discussion regarding Dr. Emad's opinions related to plaintiff's cervical spine condition does not mean he failed to consider such evidence. See <u>Howard v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted) (ALJ not required to discuss every piece of evidence in the record); <u>Black v. Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

Second, the ALJ was not required to give any explanation for deciding to omit Dr. Emad's neck restrictions from plaintiff's residual functional capacity. An ALJ must provide an explanation only when he rejects "significant probative evidence." See <u>Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted). Here, Dr. Emad's work restrictions for plaintiff's neck were neither significant nor probative evidence. As noted above, Dr. Emad proposed such restrictions only on a prophylactic basis (*i.e.* "to prevent further symptoms

and damage [to plaintiff's neck]." (AR 263).  Since prophylactic measures are intended to prevent injury, they do not reflect existing limitations.  Evidence that a physician recommended prophylactic restrictions in connection with a workers' compensation case, on its own, would not be probative of an existing limitation that an ALJ would be required to consider in connection with evaluating residual functional capacity.  Cf. Gelfo v. Lockheed Martin Corp., 140 Cal. App. 4th 34, 48 (2006) (In workers' compensation parlance, physicians recommend "prophylactic" restrictions for a worker who reaches "permanent and stationary" disability in order "to help avoid re-injury."); see also Mattox v. Astrue, 2008 WL 761073, at *8 n.9 (E.D. Cal. March 17, 2008) ("[T]he standards for disability in the worker's compensation context are quite different from the standards utilized here to determine whether plaintiff can do any other type of work."), reversed on other grounds, 374 Fed. Appx. 740 (9th Cir. 2010).  Consequently, the ALJ was permitted to disregard Dr. Emad's recommendations that plaintiff follow prophylactic neck restrictions.

      Third, even assuming Dr. Emad's opinions regarding plaintiff's cervical spine condition contained evidence that could be probative of limitations in plaintiff's neck, it can reasonably be inferred from the decision that the ALJ rejected any such opinions for specific and legitimate reasons supported by substantial evidence.  Specifically, although the ALJ acknowledged that "Dr. Emad diagnosed [plaintiff with] chronic posttraumatic injuries of the cervical . . . spine," the ALJ also noted that "no diagnostic imaging studies of the cervical spine were performed [by Dr. Emad]." (AR 31).  An ALJ may properly rejected a medical opinion that is unsupported by the physician's own treatment notes.  Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); see Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (ALJ

need not accept treating physician's opinions that are conclusory and brief, or unsupported by clinical findings, or physician's own treatment notes). Moreover, the ALJ properly rejected Dr. Emad's opinions in favor of the conflicting opinions of Drs. Moazzaz and Lim – neither of whom found any limitation in plaintiff's neck much less any other physical limitation that was not already properly accounted for in the ALJ's residual functional capacity assessment.[4] (AR 295-300, 317-21). Such opinions were supported by each physician's independent clinical findings (*i.e.*, physical examination of plaintiff), and thus constituted substantial evidence upon which the ALJ could properly rely to reject Dr. Emad's opinions. See, e.g., Tonapetyan, 242 F.3d at 1149 (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant).

Finally, even assuming the ALJ erred in rejecting Dr. Emad's opinions regarding plaintiff's cervical spine condition, any such error was harmless. Plaintiff fails to demonstrate that any limitations stemming from Dr. Emad's findings related to plaintiff's cervical spine or recommendations that plaintiff not work in jobs that "require repeated or prolonged twisting or turning of the neck or maintaining the neck in an uncomfortable position, such as with prolonged desk work, driving and overhead work" (AR 263), are not already accounted for in the ALJ's residual functional capacity assessment, which limits plaintiff to sedentary

---

[4]Although Dr. Lim opined that plaintiff could only occasionally climb, crouch, crawl, stoop and kneel, and only occasionally use the right lower extremity (AR 321), and Dr. Moazzaz opined that plaintiff could only occasionally bend, kneel, stoop, crawl and crouch (AR 299), any failure to include such limitations in the plaintiff's residual functional capacity was, at most, harmless. As the ALJ noted, such postural limitations would not erode the occupational base for a full range of unskilled sedentary work. See Stubbs–Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008) ("[T]o the extent the ALJ's RFC finding erroneously omitted [certain] postural limitations (only occasional balancing, stooping, and climbing of ramps and stairs), any error was harmless since sedentary jobs require infrequent stooping, balancing, crouching, or climbing.") (citing Social Security Ruling 96-9P at 8).

work.  Moreover, neither Dr. Emad nor any other physician who examined plaintiff opined that plaintiff could not work for any twelve-month period.  See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (in upholding the Commissioner's decision, the Court emphasized:  "None of the doctors who examined [claimant] expressed the opinion that he was totally disabled"); accord Curry v. Sullivan, 925 F.2d 1127, 1130 n.1 (9th Cir. 1990) (upholding Commissioner and noting that after surgery, no doctor suggested claimant was disabled).

Accordingly, a remand or reversal on this basis is not warranted.

**B.    The ALJ Properly Considered Plaintiff's Residual Functional Capacity**

Plaintiff argues that the ALJ failed properly to assess plaintiff's residual functional capacity, essentially because the ALJ (1) did not include Dr. Emad's limitation to "semi-sedentary work" related to plaintiff's "back condition"; (2) did not include Dr. Emad's neck restrictions; and (3) failed to obtain vocational expert testimony to determine the impact of plaintiff's neck and back conditions.  (Plaintiff's Motion at 5-6).  The Court disagrees.

First, with respect to item 1 above, the ALJ was not required to accept Dr. Emad's finding for plaintiff's workers' compensation case that plaintiff was limited to "semi-sedentary work."  See Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citation omitted); see also 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . .  A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); 20 C.F.R. § 416.927(d)(1) (same); Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir.

11

2008)[5] ("[The] determination of a claimant's ultimate disability is reserved to the Commissioner . . . a physician's opinion on the matter is not entitled to special significance."); cf. 20 C.F.R. § 404.1504 ("[A] determination made by another [governmental] agency that you are disabled . . . is not binding on us."). Even so, plaintiff fails to demonstrate that Dr. Emad's restriction related to plaintiff's back condition reflected any additional functional limitations not already accounted for in the ALJ's residual functional capacity determination.[6]

Second, to the extent this claim is predicated on item 2 above, it is derivative of plaintiff's other claim and fails for the reasons discussed above.

Third, with respect to item 3, since the ALJ determined at step four that plaintiff could perform her past relevant work, and therefore was not disabled, the ALJ was not required to call a vocational expert. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (testimony from vocational expert not required where ALJ determines at step four that claimant is able to perform past work); Wade v. Astrue, 2011 WL 4500863, *10 (E.D. Cal. Sep. 27, 2011) ("[A]t step four an

---

[5]Courts may cite unpublished Ninth Circuit opinions issued on or after January 1, 2007. See U.S. Ct. App. 9th Cir. Rule 36-3(b); Fed. R. App. P. 32.1(a).

[6]Plaintiff's argument that Dr. Emad's restriction to "semi-sedentary work" (as defined under California workers' compensation guidelines) is essentially incompatible with the ALJ's determination that plaintiff could perform the full range of "sedentary work" (as defined under the Social Security Act) (Plaintiff's Motion at 5) is, in essence, the proverbially flawed comparison of apples to oranges. The terms of art used in California workers' compensation claims are not equivalent to those used in Social Security disability cases. See Booth v. Barnhart, 181 F. Supp. 2d 1099, 1104 (C.D. Cal. 2002) (citing Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996); Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576 (9th Cir. 1988)). Under California workers' compensation guidelines, categories of work (*e.g.*, "heavy," "light," "semi-sedentary," or "sedentary") "turn on whether a claimant sits, stands or walks most of the day." Desrosiers, 846 F.2d at 576. Quite differently, "categories of work under the Social Security disability scheme are . . . differentiated primarily by step increases in lifting capacities." Id.; see also Glass v. Workers' Compensation Appeals Board, 105 Cal. App. 3d 297, 302 (1980) n.1 (quoting and discussing the "Schedule for Rating Permanent Disabilities Under Provisions of the Labor Code of the State of California").

ALJ's determination that a claimant can perform past work need not be supported by the testimony of a vocational expert.") (citations omitted); see also Gomez v. Chater, 74 F.3d 967, 971 (9th Cir.) ("At the most, the Commissioner need use a vocational expert only if there is an absence of other reliable evidence of the claimant's ability to perform specific jobs."), cert. denied, 519 U.S. 881 (1996).

Accordingly, a remand or reversal on this basis is not warranted.

### C. The ALJ Properly Evaluated Plaintiff's Credibility

#### 1. Pertinent Law

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d 880 at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily

discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; SSR 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. Burch, 400 F.3d at 681.

### 2. Analysis

Plaintiff contends that the ALJ inadequately evaluated the credibility of her subjective complaints of pain. (Plaintiff's Motion at 6-9). The Court disagrees.

First, the ALJ properly discredited plaintiff's subjective complaints of pain as inconsistent with plaintiff's daily activities. See Thomas, 278 F.3d at 958-59 (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony). For example, as the ALJ noted, contrary to plaintiff's allegations of disabling pain, plaintiff reported during a consultative psychiatric evaluation on December 23, 2008, that she was able "to dress and bathe herself . . . do household chores, run errands, shop and cook. . . ." (AR 33, 314). While plaintiff contends that such activities "did not reflect on her ability to perform any work at any exertional level on a sustained basis," the Court will not second-guess the ALJ's

///

1  reasonable interpretation that they did, even if such evidence could give rise to
2  inferences more favorable to plaintiff.
3         Second, the ALJ properly discredited plaintiff's subjective complaints of
4  pain due to internal conflicts within plaintiff's own statements.  See Light v.
5  Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997)
6  (in weighing plaintiff's credibility, ALJ may consider "inconsistencies either in
7  [plaintiff's] testimony or between his testimony and his conduct"); see also Fair,
8  885 F.2d at 604 n.5 (9th Cir.1989) (ALJ can reject pain testimony based on
9  contradictions in plaintiff's testimony).  The ALJ noted that plaintiff's statements
10 during the December 23, 2008 consultative psychiatric evaluation reflect "a
11 significantly higher level of functioning" than plaintiff indicated in her Activities
12 of Daily Living questionnaire dated October 4, 2006.  (Compare, e.g., AR 314
13 [plaintiff "able to do household chores"] with AR 230, 232 [plaintiff is able to do
14 only "[one] chore per hour" and requires help from her husband with "all
15 household chores"]).  The ALJ properly concluded that such inconsistent
16 statements eroded the credibility of plaintiff's pain allegations.  See Tonapetyan,
17 242 F.3d at 1148 ("In assessing the claimant's credibility, the ALJ may use
18 'ordinary techniques of credibility evaluation,' such as considering the claimant's
19 reputation for truthfulness and any inconsistent statements in her testimony.")
20        Accordingly, a remand or reversal on this basis is not warranted.

## V.    CONCLUSION

       For the foregoing reasons, the decision of the Commissioner of Social
Security is affirmed.

       LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  March 26, 2012

                                               /s/
                                   _____
                                   Honorable Jacqueline Chooljian
                                   UNITED STATES MAGISTRATE JUDGE